UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WENDY PECORE,

       Plaintiff,

v.                                      CASE NO. 8:20-cv-735-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

       Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for a period of disability and disability insurance benefits ("DIB").  Following an administrative hearing held on February 19, 2019, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from October 20, 2016, the amended alleged disability onset date, through March 4, 2019, the date of the ALJ's decision.[2]  (Tr. 17-61.)  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and**

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 17.)

[2] Plaintiff had to establish disability on or before December 31, 2021, her date last insured, in order to be entitled to a period of disability and DIB.  (Tr. 17.)

**REMANDED**.

## I.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff raises three issues on appeal.  First, Plaintiff contends that the ALJ erred by giving little weight to the treating opinions of Adam Rosen, M.D. (her rheumatologist) and Ashraf Hanna, M.D. (her pain management specialist), while according great weight to the opinions of Nalini Tella, M.D. (the State agency non-examining medical consultant).  (Doc. 30 at 10-14.) Plaintiff points out that Dr. Tella's opinions were issued back in April of 2018 before much of the medical evidence was added to the record, including Dr. Rosen's January 30, 2019 Physical Medical Source Statement ("MSS"), Plaintiff's December 13, 2018 prescription for a rolling walker by Dr. Hanna, and Plaintiff's September 18, 2018 disabled parking permit.  (*Id.* at 10-13.) Second, Plaintiff contends that the ALJ's residual functional capacity ("RFC") assessment and hypothetical question to the vocational expert ("VE") did not incorporate all of her symptoms and impairments.  (*Id.* at 14-18.)  Plaintiff explains:

> Substantial evidence does not support the ALJ's RFC for light
> work with no mental impairments and no assistive device.  The
> ALJ minimizes [Plaintiff's] diagnosis of RA [rheumatoid
> arthritis], Psoriatic [A]rthritis, and degenerative joint disease of
> the cervical, thoracic and lumbar spine.  The ALJ also mistakenly
> states that Dr. Rosen never diagnosed [Plaintiff] with Lupus, but
> his treatment notes diagnose or acknowledge her previous
> diagnosis of SLE [Systemic Lupus Erythematosus] at almost
> every visit.  [Plaintiff] had the classic symptoms of RA, Psoriatic
> Arthritis, Psoriasis and SLE.  Yet, the ALJ fails to include most
> of these symptoms in his RFC or hypothetical to the VE.  For

3

> example, the ALJ fails to take into account her well documented
> photosensitivity or side effects of her medications.  Allowing for
> frequent use of her hands . . . does not take into account her
> chronic complaints of wrist and hand pain with joint swelling and
> stiffness.  Last and most importantly, the ALJ fails to assign a
> limitation that [Plaintiff] would need an assistive device in the
> form of a rolling walker or cane to walk or stand.  This limitation
> alone would have precluded past work as the VE testified at the
> hearing.

(*Id.* at 16-17 (footnotes and internal citations omitted).)  Third, Plaintiff

contends that the ALJ failed to properly consider her medication side effects,

such as dizziness, fatigue, trouble concentrating, and poor memory, when

determining that Plaintiff was capable of performing her past relevant jobs,

which were sedentary and skilled with a Specific Vocational Preparation

("SVP") of 7 or 8.  (*Id.* at 18-20.)

Defendant responds that the ALJ properly evaluated the medical

opinions of record, his RFC assessment is supported by substantial evidence,

and he did not err in his consideration of Plaintiff's medication side effects

because Plaintiff did not report any side effects to her treating providers.

(Doc. 31.)

## A.    Standard for Evaluating Opinion Evidence and Subjective Symptoms

The ALJ is required to consider all the evidence in the record when

making a disability determination.  *See* 20 C.F.R. § 404.1520(a)(3).  With

regard to medical opinion evidence, "the ALJ must state with particularity

the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a

5

treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008).  Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p[3] (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources).  While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision.  SSR 96-6p.

When a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.

---

[3] SSR 96-6p has been rescinded and replaced by SSR 17-2p effective March 27, 2017.  However, because Plaintiff's application predated March 27, 2017, SSR 96-6p was still in effect on the date of the ALJ's decision.

1991) (per curiam).  "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so."  *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that her pain is disabling through "objective medical evidence from an acceptable medical source that shows . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms," pursuant to 20 C.F.R. § 404.1529(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561. *See also* SSR 16-3p[4] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to

---

[4] SSR 16-3p rescinded and superseded SSR 96-7p, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p.

perform work-related activities").

As stated in SSR 16-3p:

In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
. . .
In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[5] The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.
. . .
In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a

---

[5] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

medically determinable impairment that could reasonably be
expected to produce the individual's symptoms and given the
adjudicator's evaluation of the individual's symptoms, whether
the intensity and persistence of the symptoms limit the
individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms

and to follow treatment once it is prescribed" will also be considered "when

evaluating whether symptom intensity and persistence affect the ability to

perform work-related activities." *Id.* "[I]f the frequency or extent of the

treatment sought by an individual is not comparable with the degree of the

individual's subjective complaints, or if the individual fails to follow

prescribed treatment that might improve symptoms, [the adjudicator] may

find the alleged intensity and persistence of an individual's symptoms are

inconsistent with the overall evidence of record." *Id.* However, the

adjudicator "will not find an individual's symptoms inconsistent with the

evidence in the record on this basis without considering possible reasons he

or she may not comply with treatment or seek treatment consistent with the

degree of his or her complaints." *Id.* In considering an individual's treatment

history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her
  activities to minimize symptoms to a tolerable level by avoiding
  physical activities or mental stressors that aggravate his or her
  symptoms;
- That the individual may receive periodic treatment or

evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

## B.    Relevant Opinion Evidence

### 1.    Treating Sources

On September 18, 2018, Dr. Hanna, Plaintiff's pain management specialist, completed an Application for a Disabled Person Parking Permit on Plaintiff's behalf, stating that Plaintiff had a temporary disability from September 2018 through March 2019, which limited or impaired her ability to walk.  (Tr. 301.)  More specifically, Plaintiff's disability was her inability to walk without the use of an assistive device as a result of severe limitations in walking due to an arthritic, neurological, or orthopedic condition.  (*Id.*)  On December 13, 2018, Dr. Hanna prescribed a rolling walker for Plaintiff without specifying any conditions of use.  (Tr. 1064.)

On January 30, 2019, Dr. Rosen, Plaintiff's rheumatologist, completed a Physical MSS of Plaintiff's abilities.  (Tr. 1066-69.)  The grounds for his

10

opinions included: a physical examination, direct observation/treatment of Plaintiff, historical medical records, imaging studies, laboratory results, and Plaintiff's report. (Tr. 1068-69.) Dr. Rosen noted that Plaintiff experienced stiffness, fatigue, and joint pain in her hands, wrists, feet, ankles, and lower back, affecting her functioning and activities of daily living. (Tr. 1066.) Plaintiff's symptoms were confirmed by synovitis and decreased grip strength on examination, and MRI findings showing erosion in her hands and wrists. (*Id.*)

Dr. Rosen opined that Plaintiff's pain or other symptoms were severe enough to constantly interfere with the attention and concentration needed to perform even simple work tasks. (*Id.*) He also opined that Plaintiff could walk less than one city block without rest or severe pain and she used a cane/walker for assistance; she could stand for 15 minutes at one time; she could sit for 15 minutes at one time; she could stand/walk for less than two hours and sit for less than two hours total in an eight-hour workday; and she needed to take unscheduled breaks lasting about 30 minutes, every 30 minutes. (Tr. 1067.) Further, Dr. Rosen opined that Plaintiff could lift and carry less than 10 pounds occasionally and 10 pounds rarely; she could occasionally finger, reach, handle, and feel; and she needed to lie down at unscheduled times for four hours total in an eight-hour workday. (Tr. 1067-68.) Finally, Dr. Rosen opined that Plaintiff would likely be absent from

11

work more than four days per month as a result of her impairments or treatment.  (Tr. 1068.)

### 2.    State Agency Non-Examining Medical Sources

On July 12, 2017, based on a review of the records available as of that date, Shakra Junejo, M.D. completed a Physical RFC Assessment of Plaintiff's abilities.  (Tr. 87-88.)  Dr. Junejo opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; could sit for about six hours and stand and/or walk for about six hours in an eight-hour workday; and had no postural, manipulative, visual, communicative, or environmental limitations.  (*Id.*)  Dr. Junejo noted that the severity of Plaintiff's limitations was partly supported by the objective evidence.  (Tr. 88.)

On April 22, 2018, based on a review of the records available as of that date, Dr. Tella completed a Physical RFC Assessment of Plaintiff's abilities. (Tr. 928-29, 931-39.)  Dr. Tella opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; she could stand and/or walk for at least two hours and sit for about six hours in an eight-hour workday; she should never climb ladders, ropes, or scaffolds; and she could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl.  (Tr. 932-33.) Dr. Tella based these opinions on Plaintiff's lumbar stenosis, post-laminectomy syndrome, chronic pain syndrome, degenerative disc disease of

the lumbar and thoracic spine, cervicalgia, bilateral hip pain, uncomplicated opioid dependence, and positive antinuclear antibody ("ANA") test.  (*Id.*)  Dr. Tella also opined that Plaintiff should avoid all exposure to hazards due to her long-term opioid use and avoid concentrated exposure to extreme cold/heat and vibration due to her arthritic pain.  (Tr. 935.)

## C.   The ALJ's Decision

The ALJ found, at step two of the sequential evaluation process,[6] that Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis, rheumatoid arthritis, inflammatory arthritis, psoriasis, psoriatic arthropathy, and anemia.  (Tr. 19.)  Further, the ALJ found that Plaintiff had the RFC to perform light work[7] with the following limitations:

> [T]he claimant has the ability to lift 20 pounds occasionally and 10 pounds frequently[]; stand and/or walk [for] 2 hours and sit [for] 6 hours per 8-hour work[-]day.  The claimant is never able to climb ladders, ropes, or scaffolds; but is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  The claimant is able to frequently reach, handle, finger and feel. Furthermore, she must avoid vibration, temperature extremes, hazardous machinery, and heights.

(Tr. 21.)

In making this finding, the ALJ discussed, *inter alia*, Plaintiff's

---

[6] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

[7] By definition, light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; it requires a good deal of walking, standing, or sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 404.1567(b); SSR 83-10.

subjective complaints, third-party reports, the objective medical findings, the

treatment records, and the opinion evidence. (Tr. 21-26.) The ALJ found

that Plaintiff's statements concerning the intensity, persistence, and limiting

effects of her symptoms were not entirely consistent with the medical

evidence and other evidence in the record. (Tr. 22.) The ALJ explained:

> Based on the record as [a] whole, it appears that the claimant
> may be overstating the intensity, persistence, and limiting effects
> of her impairments to the extent she suggests that she is totally
> disabled and unable to work. The medical evidence . . . shows
> that the claimant's symptoms are well-managed with medication.
> Indeed, the claimant reported essentially the same stable level of
> pain throughout medical treatment. Moreover, the claimant
> reported significant improvement with medication and other
> treatments, including nerve block injections. Additionally, the
> claimant reported to Dr. Rosen that Dr. Hanna suggested
> surgical spinal intervention, which she denied (Ex. 19F/2),
> further suggesting that conservative treatment is effective. To
> this end, the claimant reported that she has experienced chronic
> lower back pain since she was a teenager and has managed it
> with varying doses of opiate therapy (Ex. 2F/3, 4F/6), during
> which time she has been able to work (Ex. 5D). Again, this
> suggests that medication has effectively managed the claimant's
> symptoms to the extent that she is not totally precluded from
> working.
>
> Functionally, the claimant testified that she is able to walk for 10
> minutes without an assistive device, sit for "not long," stand for
> 10 minutes, and lift and carry 10 pounds (Testimony). She
> further testified that she is able to reach overhead, but had some
> problems with manipulation. However, she also testified that she
> is able to play games on her phone, change her grandchild's
> diapers, fold laundry, and open doors (Testimony). Of note, the
> record indicates that in December 2018, despite finding that the
> claimant possessed a normal gait on physical examination (Ex.
> 20F/5), Dr. Hanna prescribed a rolling walker (Ex. 21F). Around
> the same time, Dr. Rosen noted only that the claimant walked

14

with a limp and recommended that she exercise (Ex. 19F/6). These notes are inconsistent with the claimant's allegations that she spends all day laying in bed and is unable to get up (Ex. 11E, Testimony). Indeed, at the hearing, the claimant testified that she does not use the walker around the house, but rather only when shopping or going to the store, and is able to walk without it (Testimony).

The record also contains other inconsistencies. For example, the claimant alleged that her husband helps her to get up, get dressed, shower, and cook, although she is able to feed herself, socialize, watch television, shop, sit and fold laundry, and wipe the counter (Ex. 7E, 8E, 11E). However, despite alleging that she is unable to perform almost all activities of daily living, treatment notes indicate that after the amended alleged onset date in October 2016, the claimant reported to her medical provider that her activities of daily living were "not significantly affected" (Ex. 5F/5, 16, 6F/221). Additionally, despite the claimant's allegation that she is unable to fully care for herself, four months prior to the hearing, the claimant reported to Dr. Hanna that she was travelling and taking care of her grandchild (Ex. 20F/8). Indeed, at the hearing, the claimant acknowledged that she is able to care for her 14-month-old grandchild and two dogs with assistance (Testimony). The claimant further testified that she is able to drive, go outside, shop, go to stores, walk outside, and go to church.

Thus, while the record is clear that the claimant has some symptoms related to her conditions, including pain, they appear to be well-managed with medication and other treatment, and it does not support claimant's allegations of further limitations.

(Tr. 24-25.)

As to the opinion evidence, the ALJ made the following findings:

[The ALJ] affords little weight to the State agency medical consultant's assessment of the claimant's physical abilities on reconsideration that the claimant is able to stand for 6 hours in an 8-hour work[-]day and has no additional non-exertional limitations (Ex. 4A) because the consultant did not have the

15

benefit of the evidence received at the hearing level and did not adequately consider the allegations of the claimant, which support more restrictive limitations.

The [ALJ] also affords little weight to Dr. Rosen's [MSS] (Ex. 22F). . . . Although Dr. Rosen indicated that he based his opinion on direct observation/treatment, physical examination, historical medical records, imaging studies, and laboratory results, it appears that most of the limitations opined by Dr. Rosen appear to be based primarily on the claimant's subjective reports of pain. Indeed, except for noting decreased grip strength on physical examination, Dr. Rosen did not identify any objective medical evidence to support his opinion on the claimant's physical abilities and limitations. Accordingly, the [ALJ] assessed manipulative non-exertional limitations to account for this, although the [ALJ] affords little weight to the rest of Dr. Rosen's opinion.

Conversely, the [ALJ] affords great weight to the State agency medical consultant, Dr. Nalini Tella, M.D.'s[] assessment on review that the claimant is capable of performing work at the light exertional level, except that the claimant is able to stand for 2 hours in a[n] 8-hour work[-]day, with additional postural and environmental limitations (Ex. 11F, 13F). This assessment was rendered after reviewing additional medical evidence, including new spinal and rheumatology evidence, and is consistent therewith. However, after a thorough review of all of the evidence, including the claimant's allegations, the [ALJ] deems it appropriate to assess non-exertional manipulative limitations based on Dr. Rosen's opinion.

As for the evidence showing the claimant's application for a disabled person parking permit, signed by Dr. Hanna (Ex. 20E), and the Oswestry Disability Index profile completed in 2015 (Ex. 2F/5), to the extent that they constitute opinions, the [ALJ] affords them little weight. Indeed, they are not opinions regarding the nature and severity of the claimant's impairments, the claimant's remaining physical or mental abilities despite the impairments, or the claimant's physical or mental restrictions, but rather a conclusion that the claimant is disabled. A determination of whether an individual is "disabled" is an

> administrative finding that is reserved to the Commissioner.
> Accordingly, the [ALJ] finds that these records are conclusions
> not entitled to controlling weight or special significance.

(Tr. 25-26.)

The ALJ also considered the non-medical evidence of record and stated:

> The claimant's husband, mother, and step-father submitted
> statements consistent with the claimant's own allegations;
> specifically, that the claimant has experienced worsening
> symptoms, including pain, that limit her functionally and in
> performing her activities of daily living (Ex. 19E, 21E, 22E).
> Although these statements are all consistent with each other,
> they are not consistent with the medical evidence such that the
> claimant has reported consistent and stable symptoms to her
> medical providers, as discussed above.  Accordingly, the [ALJ]
> only affords them some weight.  Additionally, the [ALJ]
> considered the notes of field office personnel recorded during an
> in-person interview with the claimant, stating that the claimant
> had no difficulty with hearing, reading, breathing,
> understanding, coherency, concentrating, talking, answering,
> standing, walking, seeing, using her hands, or writing, although
> she exhibited some difficulty with sitting and got up to move
> around a few times (Ex. 2E).

(Tr. 24.)

Then, at step four, the ALJ determined that Plaintiff was capable of

performing her past relevant work as a Marketing Director (a sedentary,

skilled job with an SVP of 8); Regional Manager (a sedentary, skilled job with

an SVP of 8); and Market Research Analyst (a sedentary, skilled job with an

SVP of 7).  (Tr. 26.)  Thus, the ALJ determined that Plaintiff was not under a

disability from October 20, 2016 through March 4, 2019.  (Tr. 27.)

17

### D.   Analysis

The Court agrees with Plaintiff that the ALJ improperly evaluated the opinion evidence and his RFC assessment is not supported by substantial evidence.  The ALJ gave great weight to Dr. Tella's non-examining opinions because they (unlike Dr. Junejo's non-examining opinions) were "rendered after reviewing additional medical evidence, including new spinal and rheumatology evidence, and [were] consistent therewith."  (Tr. 25.)  However, in April of 2018 when Dr. Tella issued her opinions, she did not have the benefit of reviewing and considering any of the subsequent treatment records, Dr. Rosen's January 30, 2019 MSS, and Dr. Hanna's prescription for a rolling walker and statements in Plaintiff's Application for a Disabled Person Parking Permit, all of which tend to corroborate Plaintiff's claim of disability.

Defendant argues that it was not an error for the ALJ to rely on Dr. Tella's somewhat outdated opinions because the ALJ had the benefit of reviewing the complete record before issuing his decision.  Even accepting Defendant's position, the Court notes that the ALJ's reasons for essentially discounting the treating opinions, while according great weight to the non-examining opinions, are not supported by substantial evidence.

First, the ALJ stated that Dr. Rosen's opinions seemed to be based primarily on Plaintiff's subjective reports of pain and that Dr. Rosen did not

18

identify any objective medical evidence in support of his opinions other than decreased grip strength.  (*Id.*)  Contrary to the ALJ's statement, in addition to decreased grip strength, Dr. Rosen also identified synovitis on physical examination and erosion in Plaintiff's hands and wrists as shown on MRI testing.[8]  (Tr. 1066.)  Dr. Rosen explicitly stated that his opinions were based not only on Plaintiff's report, but also on his physical examination, direct observation/treatment, historical medical records, imaging studies, and laboratory results.  (Tr. 1068-69.)

Moreover, there is an abundance of medical records supporting Plaintiff's complaints of disabling pain and other symptoms.  For example, Plaintiff consistently reported lower back pain and stiffness; lumbar radicular pain; lower extremity numbness, tingling, and weakness; hip pain; upper back pain; neck pain; pain and swelling in the hands, wrists, ankles, neck, and lower back; numbness and tingling in the bilateral wrists; knee pain; joint pain; rheumatoid arthritis flare-ups with worsening joint pain, rash, malaise, low degree fever, and extreme fatigue.  (Tr. 45, 354-55, 357-58, 373, 422, 427, 792, 799, 806, 830, 838, 846, 849, 854, 857, 860, 863, 866, 886,

---

[8] The record does not include any MRI testing of Plaintiff's hands/wrists, even though it includes X-rays of Plaintiff's hands from May 26, 2016.  (*See* Tr. 481.)  The progress notes from Arthritis & Rheumatism Associates where Dr. Rosen practiced reveal that MRI tests of Plaintiff's upper extremities were ordered on August 2, 2017.  (Tr. 799-800.)  Although the record does not include these MRI tests, Dr. Rosen's assessments listed, *inter alia*, effusion of Plaintiff's hands and wrists, apparently based on the results of these tests.  (Tr. 804.)

958, 987, 1010, 1017, 1033, 1037.)  The medical records show that Plaintiff's symptoms were aggravated by general activity, prolonged sitting, standing, walking, bending, twisting, and climbing stairs.  (Tr. 354, 358, 422, 830, 886.) Also, Plaintiff's flare-ups were worse with stress and sun exposure.  (Tr. 792, 799, 806, 813, 1003, 1010, 1017.)

Although the ALJ characterized Plaintiff's pain level as stable, Plaintiff's documented pain level was consistently between 5/10 and 8/10 *with medications*.  (*See* Tr. 354, 357, 792, 799, 804, 830, 834, 838, 842, 846, 849, 854, 857, 860, 863, 958, 964, 987, 1008, 1010, 1033.)  Moreover, her physical examinations seemed to confirm the severity of her symptoms by showing, *inter alia*: lumbar tenderness to palpation, stiffness, and pain; pain with motion in the cervical spine and hips; restricted and painful flexion and extension in the cervical, lumbar, and thoracic spine with moderate spasm; decreased strength, numbness, and tingling in the lower extremities; bilateral leg pain; bilateral arm pain; bilateral wrist pain; tenderness in the feet/ankles; decreased and painful range of motion in the lumbar spine; moderate tenderness in the left knee; antalgic gait (also limping, slow, and cautious at times); some positive Straight Leg Raising tests on the right; joint pain, stiffness, swelling, and tenderness; synovitis of the proximal interphalangeal ("PIP") joints and the distal interphalangeal ("DIP") joints; muscle cramping and spasm; neck pain and stiffness; rashes; Malar rash;

20

photosensitivity; psoriasis; fatigue; fever; malaise; headache; memory impairment; and insomnia.  (*See* Tr. 355, 358, 362-63, 373, 412, 414, 417, 420, 423, 428, 754, 794-96, 800-01, 807-09, 814-16, 831, 835, 839, 843, 846-47, 850, 855, 858, 861, 863-64, 867, 869-70, 873-74, 878, 881, 884, 886-87, 890, 953, 959, 965, 988, 1005-07, 1012-14, 1018-20, 1034, 1038, 1041, 1046, 1050.)

The diagnostic test results cited throughout the record also revealed abnormalities consistent with the findings on physical examination.  (*See, e.g.*, Tr. 398-400 (noting that a January 6, 2016 lumbar MRI showed: "4 mm broad-based right paracentral disc protrusion.  Mild central canal stenosis.  Moderate right and mild left lateral recess stenosis.  Mild right and moderate left foraminal stenosis.  Otherwise multilevel discogenic and facet joint degenerative changes"); Tr. 824-25 (noting that a January 8, 2018 lumbar MRI showed: L4-L5 disc bulge and facet hypertrophy with mild to moderate canal stenosis, recess narrowing, and foraminal narrowing; L3-L4 disc bulge and facet hypertrophy with mild canal stenosis and moderate foraminal narrowing toward the right; L5-S1 disc bulge with disc herniation; L2-L3 disc bulge and facet hypertrophy; neural foramina demonstrated mild to moderate narrowing bilaterally; and scoliotic curvature of the lumbar spine); Tr. 822 (noting that a January 8, 2018 thoracic MRI showed: T11-T12 disc bulge with mild canal stenosis and disc herniation to the left with moderate to severe left foraminal stenosis; T10-T11 disc herniation with mild canal stenosis; T9-

T10 disc herniation; and thoracic spondylosis).)

Given these results and examination findings, Plaintiff's course of treatment was regular[9] and extensive, including: a laser lumbar laminectomy with discectomy[10] on June 8, 2016; a series of epidural steroid injections with minimal temporary relief; nerve root block injections; medial branch block injections; sacral lateral branch block injections; medications (Percocet 10/325; Oxycontin 40 mg; Lyrica 100 mg; nonsteroidal anti-inflammatory drugs ("NSAIDs"); etc.); Hydrocortisone topical cream; Fentanyl patch; physical therapy; chiropractic care; massage; a TENS unit; a trial of spinal cord stimulator; and stretching exercises.  (*See, e.g.*, Tr. 348-50, 355-58, 368, 370-74, 532, 828, 895-98, 913, 916-17, 956-57, 962-63, 971-72, 974-75, 980-83.)  Also, as part of her treatment, Plaintiff was prescribed a rolling walker and a back brace for walking/standing for any length of time, which she also wore at the hearing.  (Tr. 50, 267, 853-54, 1006, 1036; *see also* Tr. 1033 & 1037-38 (noting that Plaintiff was ambulating with a cane at her November

---

[9] *But see* Tr. 1017 (noting that Plaintiff did not follow-up "due to financial reasons and being overwhelmed by too many doctor's visits"); Tr. 1039 ("Postponing procedures until February [due to] finances.").

[10] It appears that Dr. Hanna offered a spinal fusion to relieve Plaintiff's ongoing back pain, but Plaintiff was "not sure" about undergoing another back surgery.  (Tr. 1003.)  The ALJ interprets Plaintiff's refusal to undergo a second back surgery as indication that her conservative treatment was effective.  (Tr. 24.) However, the record shows otherwise.

9, 2018 and December 13, 2018 appointments with Dr. Hanna).)[11]

Further, the record evidence demonstrates that Plaintiff's condition has progressively worsened over the years. (*See, e.g.*, Tr. 43, 354, 357, 868, 1004, 1040.) Additionally, Plaintiff's treatment was not as effective and did not result in "significant improvement," (Tr. 24), as the ALJ indicated. (*See* Tr. 355 (noting "the patient has failed conservative management"); Tr. 373 ("Given the patient's failure to respond to extensive conservative care, I have recommended she undergo a lumbar decompression on the right at L5-S1. . . . Of special note, the patient has been on chronic narcotics at a very high level."); Tr. 830, 838 & 842 (noting no relief from trigger point injections); Tr. 879 ("The patient has non-malignant pain syndrome which has not been adequately controlled nor has responded to other medication, therapy and interventions, necessitating the use of opioid analgesics prescription for over 72 hours.").) While the records showed some improvement (up to 60% pain relief at times), it was temporary, necessitating constant opioid medication and injection therapy, and Plaintiff still reported pain from 5/10 to 8/10 *with treatment*. (*See, e.g.*, Tr. 869, 873, 877, 880, 883, 1045; *but see* Tr. 828-29 & 968-69 (noting 80% pain relief after a branch block).)

---

[11] Although at some visits, Dr. Rosen encouraged Plaintiff to exercise and start nutrition therapy, he did so because Plaintiff was overweight. (Tr. 796-97, 802, 816, 1007.) His progress notes still reflected positive examination findings and symptomatology.

In formulating his RFC, the ALJ also considered Plaintiff's daily activities, including her statement to Dr. Hanna on November 9, 2018 that she was traveling and taking care of her grandchild. (Tr. 25.) However, Dr. Hanna's progress note from that day indicates that this isolated activity exacerbated Plaintiff's pain. (Tr. 1037; *see also* Tr. 52 (testifying at the hearing that Plaintiff could not care for her 14-month-old granddaughter, other than change her diaper and watch TV with her).) The record consistently shows that Plaintiff had very limited daily activities[12] (*see, e.g.*, Tr. 42, 50-54), and any general activity, standing, walking, bending, twisting, climbing stairs, and prolonged sitting aggravated her symptoms (Tr. 354, 358, 422, 830, 886). Social Security personnel observed that Plaintiff had "a difficult time sitting" and "had to get up and move around several times" during her in-person interview. (Tr. 67, 84.) Also, as noted earlier, Plaintiff

---

[12] The performance of limited daily activities is not necessarily inconsistent with Plaintiff's allegations of disability. *See, e.g.*, *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985) (per curiam) (reversing and remanding the case to the Commissioner for lack of substantial evidence to support the finding that the claimant had no severe impairment, even though the claimant testified that she performed housework for herself and her husband, accomplished other light duties in the home, and "was able to read, watch television, embroider, attend church, and drive an automobile short distances"); *White v. Barnhart*, 340 F. Supp. 2d 1283, 1286 (N.D. Ala. 2004) (holding that substantial evidence did not support the decision denying disability benefits, even though the claimant reported that she took care of her own personal hygiene, cooked, did housework with breaks, helped her daughter with homework, visited her mother, socialized with friends sometimes, and, on a good day, drove her husband to and from work, but needed help with grocery shopping, and could sit, stand, or walk for short periods of time).

was wearing her back brace during the administrative hearing.  (Tr. 50.)

The ALJ noted that a few progress reports from BMG mentioned that Plaintiff's activities of daily living were "not significantly affected."  (Tr. 414, 425, 754.)  Yet, there are many references in the record showing just the opposite.  (*See, e.g.*, Tr. 355 ("At this time [in June of 2016], pain is significantly affecting the patient's activities of daily living and negatively impacting the patient's quality of life."); Tr. 357 ("Her [activities of daily living] have been limited due to pain."); Tr. 359 (same); Tr. 373 ("As a result of the current medication, the patient is not functional.  Even her husband says it looks like she is a zombie, walking around in a fog."); Tr. 792, 806, 813 & 1003 (noting functional limitation).)  Based on the foregoing, the Court cannot conclude that the ALJ properly evaluated the opinion evidence and that his RFC was supported by substantial evidence.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to conduct the five-step sequential evaluation process in light of all the evidence, including all opinion evidence, and conduct any further proceedings deemed appropriate.

2.      The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3.      In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012).  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on August 23, 2021.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record